IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-00115-10-CR-W-NKL |
| ) | |
| LUIS MORGAN, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Luis Morgan's Motion to Suppress Statements (doc #138). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On April 4, 2007, the Grand Jury returned a nineteen count indictment against defendants Fernando Chavez, Jose Estrada, Juan Delgado, Raymond Sparks, Sylvia Delgado, Jose Canales, Cruz Santa-Anna, Jose Ortega-Gallagos, Carlos Hernandez, Luis Morgan, Ricardo Ruiz, Omar Villareal, Julian Araiza, JUD, LLC, and Santadelg Properties, LLC. Defendant Morgan is charged in Count One of the indictment. Count One charges that from June 11, 2002 through April 1, 2007, all defendants knowingly conspired with others to distribute five kilograms or more of cocaine.

On October 10, 2007, the undersigned conducted an evidentiary hearing on defendant Morgan's motion to suppress. Defendant Morgan was represented by appointed counsel Tony R. Miller. The Government was represented by Assistant United States Attorney Jane P. Brown. The Government called Task Force Officer Justin Branner of the Johnson County Sheriff's Office and Task Force Officer Robert W. West of the Independence Police Department as witnesses. The defense called no witnesses to testify.

II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the

following proposed findings of fact:

1. On April 10, 2007, there was a take-down where many officers went out and arrested the defendants who had been indicted in this case on April 4, 2007. (Tr. at 4) Task Force Officer ("TFO") Justin Branner was given the assignment of locating Luis Morgan and arresting him. (Tr. at 3) TFO Branner was advised by a DEA agent that Morgan might be working at a construction site in Marshall, Missouri. (Tr. at 4-5) TFO Branner, TFO Robert West and Special Agent Marty Chitwood traveled to Marshall, Missouri, and contacted local police officers. (Tr. at 5; Government's Ex. 1) The local police officers took the task force officers to a location where there was ongoing construction of a Mexican restaurant. (Tr. at 5) The officers established surveillance at the restaurant. (Tr. at 5)

2. At approximately 12:15 p.m., TFO West recognized defendant Morgan driving a red Dodge pickup truck. (Government's Ex. 1) TFO West recognized the red pickup truck because Morgan had utilized it during the larger part of the investigation. (Tr. at 6) TFO West identified Morgan based on previous surveillance and photos. (Tr. at 6) Morgan carried sacks of McDonald's food into the building and then returned to the pickup truck where he began talking on a cell phone. (Government's Ex. 1)

3. Once it was organized among the local police officers, the task force officers and Special Agent Chitwood, the officers decided to approach defendant Morgan inside his vehicle. (Tr. at 6) The officers identified themselves and asked Morgan to step out of the vehicle. (Tr. at 6) Morgan stepped out of the vehicle and asked the officers in English why they were there. (Tr. at 6-7) TFO West testified that he advised Morgan he was under arrest and read the indictment to Morgan as he was removed from his vehicle by the local police. (Tr. at 23; Government's Ex. 1) Morgan was handcuffed and placed in TFO West's vehicle. (Tr. at 7)

4. Defendant Morgan sat in the front passenger seat with TFO West as the driver and TFO Branner in the back passenger seat. (Tr. at 7) The officers again advised Morgan of the reason for his arrest and that there was a warrant issued. (Tr. at 7) TFO Branner read Morgan his Miranda rights from a card issued by the Johnson County Sheriff's Office. (Tr. at 7-8) The Miranda Warning card provides:

   1. You have the right to remain silent.

   2. Anything you say can and will be used against you in a court of law.

   3. You have the right to talk to a lawyer and have him present while you are being questioned.

   4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.

   5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

   (Government's Ex. 3) Morgan indicated that he understood each of these rights as they were being read to him, either by nodding yes or by verbally saying yes. (Tr. at 8-10) TFO Branner then read the following Waiver from the card:

2

> 1. Do you understand each of these rights I have explained to you?
>
> 2. Having these rights in mind, do you wish to talk to us now?
>
> (Government's Ex. 3) Morgan indicated that he understood his rights and that he wanted to talk to the officers. (Tr. at 10) TFO West testified that TFO Branner read the Miranda rights to Morgan before any questions were asked of Morgan regarding the case. (Tr. at 24)

5. None of defendant Morgan's responses were in Spanish. (Tr. at 11, 23) Morgan did not ask for an interpreter during or after the time the Miranda waiver was read to him. (Tr. at 11, 23) Morgan also did not ask for an interpreter during the hour or so that it took to get back to Kansas City. (Tr. at 11, 23) Morgan gave narrative responses to questions, rather than just yes or no answers. (Tr. at 21) As TFO West testified, Morgan was "engaged in conversation." (Tr. at 23) TFO Branner testified that he had no reason to believe that Morgan needed an interpreter because from their initial contact, Morgan appeared to understand all of TFO Branner's commands and all the statements he made and Morgan spoke in English to the officers. (Tr. at 11) TFO Branner testified that it never entered his mind that Morgan could not speak English. (Tr. at 11)

6. After defendant Morgan was given his Miranda rights, he proceeded to give the officers explicit details about the other individuals who were involved in the drug conspiracy. (Tr. at 12) Morgan was shown pictures of the other defendants in the case and he identified the majority of these individuals by name. (Tr. at 12) TFO Branner understood that Morgan wanted to cooperate in the case and provide information to the government. (Tr. at 15) Morgan was told that anything he did to help the officers could do nothing but help him, but nothing was offered to Morgan in exchange for him agreeing to cooperate. (Tr. at 20)

7. A Report of Investigation prepared by TFO West, regarding the debriefing of defendant Morgan, sets forth the following information provided by Morgan:

   > 4. During the trip to the U.S. Marshall's Office in Kansas City, Missouri, MORGAN, talked freely about his drug involvement with co-defendants. From a series of photographs shown to him by TFO Branner, MORGAN identified Jose ESTRADA as "Enrique". MORGAN said he never bought any drugs from Enrique.
   >
   > 5. MORGAN identified photos shown him by TFO Branner as follows:
   >
   > | Jose ESTRADA | as "Enrique" | -MORGAN said he never bought any drugs from Enrique. |
   > |---|---|---|
   > | Raymond SPARKS | as "Ray" | -MORGAN said "Juan" and "Shaggy" gave cocaine to "Ray". |
   > | Juan DELGADO | as "Juan" | -MORGAN said he bought approximately one to one and one half kilograms of cocaine per month from "Juan" @ $17,000.00 per kilogram, the last purchase being four months |

3

|  |  |  |
|---|---|---|
|  |  | ago, a month before he went to jail. MORGAN said most drug deals were done at MORGAN's old residence at 639 Tenny, Kansas City, Kansas. |
| Sylvia DELGADO | as "Sylvia" | -MORGAN said he knew "Carlos" was Sylvia's uncle but did not know Carlos well. MORGAN identified Sylvia as Juan's wife working at SUPER POLLO. |
| Omar Villareal | as "Shaggy" | -MORGAN said he bought approximately one to one and one half kilograms of cocaine per month from "Juan" (Which at times were given to him by shaggy through Juan) @ $17,000.00 per kilogram, the last purchase being four months ago, a month before he went to jail. MORGAN said all drug deals were done at MORGAN's old residence at 639 Tenny, Kansas City, Kansas. |
| Carlos HERNANDEZ | as "Carlos" | -MORGAN said he last saw "Carlos" six months ago. |
| Jose ESTRADA | as "Enrique" | -MORGAN said he never bought Drugs from "Jose" but knew Jose was a drug dealer. |
| Ricardo RUIZ | as "Ricardo" | -MORGAN said "Ricardo" used to work at Super Pollo and thought he was "dopin" but knew Ricardo had domestic problems. MORGAN thought Ricardo had been arrested for attempted homicide in the past. |
| Julian ARIAZA |  | a photograph MORGAN did not recognize. |
| Cruz SANTA Anna | as "Nene" | -MORGAN said he recognized "Nene" but did not associate all that much with him. MORGAN thought Nene was involved with drugs. |

6. MORGAN continued to speak freely about his drug activities and of his arrest several months ago. MORGAN said he met with Fernando CHAVEZ and "Enrique" last summer at Taqueria Mexico, 910 Southwest Boulevard, Kansas City, Missouri. MORGAN said he had gone into Taqueria Mexico and observed CHAVEZ and "Enrique" sitting down eating in the restaurant and said hello to them. After CHAVEZ and "Enrique" finished eating, they came over to MORGAN and sat with him.

4

> 7. MORGAN did not remember what month last summer it was that he met with CHAVEZ and "Enrique" and did not know what car "Enrique" was driving.

(Government's Ex. 2)

8. TFO Branner testified that while defendant Morgan may have asked that a question be repeated because he had not heard what TFO Branner said, Morgan never asked TFO Branner to repeat a question based on a communication barrier. (Tr. at 15)

9. TFO Branner testified that at no time from his initial contact with defendant Morgan until the time Morgan was processed by the United States Marshals did Morgan give any indication that he did not understand English or that Morgan himself even spoke Spanish. (Tr. at 16) TFO West testified that Morgan had just a slight Spanish accent. (Tr. at 25) TFO West testified that he is not aware of Morgan using Spanish at any time during the investigation. (Tr. at 26-27) When TFO Branner and TFO West went out to arrest Morgan, they were not aware that Morgan had been born in Mexico. (Tr. at 15, 23) TFO Branner did not know anything about Morgan's educational background. (Tr. at 19) TFO Branner testified that if Morgan had asked for an interpreter, one would have been provided. (Tr. at 16)

### III. DISCUSSION

Defendant Morgan seeks to suppress all statements obtained during the investigation and arrest of Morgan on April 10, 2007. (Motion to Suppress Statements at 1) Defendant argues that his primary language is Spanish and because he was not advised of his Miranda rights in Spanish, he did not knowingly waive his rights. (Id. at 2)

The statements on which evidence was presented at the hearing are contained in paragraph 7 of the above proposed findings of fact. The statements (which defendant gave in English) were made after defendant was given his Miranda warnings in English. There was no evidence presented that defendant was coerced, intimidated or incapacitated in any way when he was given his Miranda rights or when he gave his statements, nor that defendant's waiver of these rights was anything other than voluntary.

As for the fact that the Miranda warning was given in English, the evidence presented at the hearing clearly establishes that defendant Morgan was able to speak and understand English. For instance, when the officers identified themselves and asked Morgan to step out of his vehicle, Morgan asked the officers in English why they were there. (See Fact No. 3, supra) Morgan indicated that he understood each of the Miranda rights as they were being read to him in English,

5

either by nodding yes or by verbally saying yes. (See Fact No. 4, supra) During the hour or so that it took to get back to Kansas City, Morgan was "engaged in conversation" with the officers. (See Fact No. 5, supra) None of defendant Morgan's responses were in Spanish. (Id.) Morgan gave narrative responses to questions, rather than just yes or no answers. (Id.) Morgan gave the officers explicit details about the other individuals who were involved in the drug conspiracy. (See Fact No. 6, supra) TFO Branner testified that Morgan appeared to speak and understand English. (See Fact Nos. 5 and 9, supra) TFO Branner further testified that Morgan never gave any indication that he even spoke Spanish. (See Fact 9, supra) Finally, TFO West testified that he is not aware of Morgan using Spanish at any time during the investigation. (Id.)

In Bram v. United States, 168 U.S. 532, 542-43 (1897), the United States Supreme Court held that the voluntariness of a confession depends upon whether the confession was "extracted by any sort of threats of violence, obtained by any direct or implied promises however slight, [or] by the exertion of any improper influence." In Schneckloth v. Bustamonte, 412 U.S. 218 (1973), the Court explained the voluntariness test:

> Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

Id. at 225. Whether or not a confession is made freely and voluntarily must be determined in light of the totality of the circumstances. See United States v. Hyles, 479 F.3d 958, 966 (8th Cir. 2007); United States v. Warbonnet, 750 F.2d 698, 700 (8th Cir. 1984); Rachlin v. United States, 723 F.2d 1373, 1377 (8th Cir. 1983).

Based on the evidence outlined above, the Court finds that defendant Morgan was fully advised of his rights, that he understood his rights and that he voluntarily and intentionally waived those rights and agreed to talk to the officers. Defendant's motion to suppress statements must fail.

## IV. CONCLUSION

For the reasons set forth above, it is

RECOMMENDED that the Court, after making an independent review of the record and

6

Case 4:07-cr-00115-NKL   Document 195   Filed 02/12/08   Page 6 of 7

applicable law, enter an order denying defendant Morgan's Motion to Suppress Statements (doc #138).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE